UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 3:12-cr-00136 |
| v. ) | JUDGE TRAUGER |
| ) | |
| CHRISTOPHER N. BONICK ) | |

UNITED STATES' SENTENCING MEMORANDUM AND
RESPONSE TO DEFENDANT'S SENTENCING POSITION

The United States of America, by and through S. Carran Daughtrey, Assistant United States Attorney for the Middle District of Tennessee, hereby submits this memorandum in support of its position that this defendant should receive a substantial sentence, as well as in response to defendant's recently filed Sentencing Position. D.E. 159. Pursuant to the factors set forth in 18 U.S.C. § 3553(a), this Court must consider a number of factors in addition to the advisory sentencing guideline when determining the appropriate sentence, including the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes of this defendant. A total sentence of 300 months, which is within the guideline range as calculated by the U.S. Probation Office, followed by lifetime supervised release, would account for all of the goals enumerated in 18 U.S.C. §3553(a).

Background

The facts listed in the Presentence Investigative Report ("PSR") are accurate. PSR, ¶¶ 1-31. From July 2010 through July 2011, the defendant Christopher N. Bonick engaged in online chat conversations with an undercover investigator, who represented herself to be a thirteen-year-

1

old girl, "lilmaddygrl." The defendant, who was 25 years old at the beginning of the chat, aggressively pursued "lilmaddygrl" sexually, despite knowing her age. PSR, ¶ 5; D.E. 154-1: Trial Exhibit #1. The defendant asked "lilmaddygrl" about her bra size, asked if she would strip for him, sent her a photograph of his penis, and crudely asked her if she would engage with him in oral, vaginal, and anal sex. PSR, ¶ 6-8; D.E. 154-1: Trial Exhibit #1, pages 1-2, 5, 10-11, 13-14. He provided misleading information to encourage her to agree to sex, said he would take her shopping if she had sex with him, and asked her to send sexually explicit images of herself. PSR, ¶ 8; D.E. 154-1: Trial Exhibit #1, pages 11-12. He wanted the two of them meeting to engage in sex, and tried to encourage "lilmaddygrl" by reporting that he had engaged in sex with a 15-year-old girl who he claimed liked it. PSR, ¶8; D.E. 154-1: Trial Exhibit #1, pages 12-15. He later admitted to a law enforcement officer that he had flown to Tennessee to have sex with a 15-year-old girl, who clearly felt coerced into engaging in sex with him. PSR, ¶¶ 15, 23-26; D.E. 46-1: Transcript of First Interview, PageID#: 240, 249–52. After finding out that "lilmaddygrl" had a dog, the defendant asked if she was "one of those girls who jerks off her dog" and sent a picture to her of someone engaged in sexual activity with a dog. PSR, ¶9; D.E. 154-1: Trial Exhibit #1, page 15.

In addition to attempting to entice "lilmaddygrl" to engage in sexual activity, the defendant also trolled the Internet looking for other minor adolescent girls on teen oriented social media and chat sites such as www.teenchat.com, www.teenspot.com, and www.tagged.com. PSR ¶¶ 13, 19, 22, 27-30.[1] He would engage young girls in chat conversations, turn the conversation sexual, talk

---

[1] The minor girls referenced in the PSR are each included in D.E. 156: Sealed Exhibit of Sexually Explicit Chats with Minor Girls:
    PSR ¶ 23-27 refers to Minor Girl #11
    PSR ¶ 28 refers to Minor Girl #19
    PSR ¶ 29 refers to Minor Girl #12
    PSR ¶ 30 refers to a minor child whose chats are not included in the sealed exhibit.

2

about sex, send pictures of his penis to them, ask them to perform sex acts on web cameras, make plans to meet in person for sex, offer to pay them to engage in sexual activity, and/or urge them to send sexual explicit images of themselves. He continued these online conversations even after discovering that he was talking to a minor girl. PSR, ¶¶ 13-14, 21-22, 26-31; D.E. 156: Sealed Exhibit of Sexually Explicit Chats with Minor Girls; D.E. 46-1: Transcript of First Interview, PageID# 226-28, 230-31, 233, 239-40, 249-53, 255-56; D.E. 46-2: Transcript of Second Interview, PageID# 278-79, 283-84. The United States will be introducing these very explicit and sometimes disturbing chats as exhibits during the sentencing hearing.

Unfortunately, many of these minors could not be identified. Of the few that were identified, their families either did not want to pursue charges or there was no venue to pursue federal crimes in this district based on the timing and/or location of the defendant and/or victims at the time the defendant committed the crimes. PSR ¶¶ 27-31. The United States does not anticipate additional charges will be viable at this time. As such, Count One charging Attempted Enticement of a Minor to Engage in Sexual Activity does not represent the full extent of this defendant's criminal activity.

In addition to requesting and saving child pornography from the minor girls the defendant talked to online, he also collected child pornography online. PSR, ¶¶12, 17. While the defendant sent and received child pornography images to other individuals, this activity did not occur while the defendant lived in the Middle District of Tennessee, and as such, he could only be charged and convicted of Possession of Child Pornography in this jurisdiction, another example of the charged conduct not representing the full extent of this defendant's criminal behavior. See PSR, ¶¶ 19, 20. Based on the defendant's objection that the 77 images of child pornography in his possession do not constitute sexually explicit images of minors, the United States will be presenting all of

3

those images at the sentencing hearing, as well as testimony about the ages of some of the children who are known. See PSR, ¶ 18.

After being identified by the undercover law enforcement officer, the defendant was charged by criminal complaint on January 23, 2012, and later by indictment on July 11, 2012. D.E. 3: Criminal Complaint; D.E. 26: Indictment. The indictment charged the defendant with Attempt to Entice a Minor to Engage in Sexually Explicit Activity, in violation of 18 U.S.C. § 2422(b), and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

The defendant denied his criminal activity, proceeded to trial, and was found guilty of both counts on March 23, 2016.

<u>Appropriate Sentence</u>

This Court is now tasked with imposing a sentence that is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). The United States submits that consideration of each of these factors as a whole supports a sentence of at least 300 months, a guideline sentence as calculated by the U.S. Probation Office, based on the extensive nature of the defendant's criminal behavior.

I.  <u>Nature of the Offenses</u>, 18 U.S.C. § 3553(a)(1)

Pursuant to 18 U.S.C. § 3553(a)(1), this Court should consider the nature and circumstances of these offenses. In this case, the defendant was found guilty of attempting to entice a minor to engage in unlawful sexual activity and possession of child pornography. Both of these crimes are very serious, but the enticement is particularly serious because the defendant was targeting young teens who were just entering adolescence, who had very poor judgment because

of their age, and who were thus very vulnerable. The defendant, who often was ten or more years older than his victims, was preying on these young girls in hopes of getting sexual satisfaction. In doing so, he victimized numerous young teen girls, many of whom may well suffer emotionally from his invasion into their lives. Often young girls victimized this way end up blaming themselves for their compliance in these kinds of cases, not understanding that they really are still children who are very vulnerable to sexual predators like Bonick. Unfortunately, media reports are all too common of suicides and attempted suicides by such victims, particularly when a peer has found out about the sexually explicit images and publicizes them to other peers.

With regard to his possession and trafficking in child pornography, Congress has plainly indicated that "[e]very instance of viewing images of child pornography represents a . . . repetition of their abuse." 18 U.S.C. § 2251, Historical and Statutory Notes: Child Pornography Prevention of 2006, Pub.L.No. 109-248, Title V, ' 501, July 27, 2006, 120 Stat. 587, 623 (2006). In U.S. Sentencing Commission Report to Congress: Federal Child Pornography Offenses [2] ("the Commission Report"), the Executive Summary section notes as follows:

> Child pornography victims are harmed initially during the production of images, and the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims. Many victims live with persistent concern over who has seen images of their sexual abuse and suffer by knowing that their images are being used by offenders for sexual gratification and potentially for "grooming" new victims of child sexual abuse.

Commission Report, pp. vi-vii.

While the identity of most of the defendant's child pornography victims in this case are unknown, several have been identified. One victim from the "BluePillow Series" has shared her

---

[2] The Report can be found at http://www.ussc.gov/news/congressional-testimony-and- reports/sex-offense-topics/ report-congress-federal-child-pornography-offenses.

5

devastating experience from knowing that people are collecting sexual explicit images of her. She expresses her frustration about not being able to live the normal life of a teenager for fear of being recognized, having to give up modeling and acting for fear of someone recognizing her and publicizing her victimization, and fearing that someone she knows at school or otherwise will find out about her past. Her mother talks about how her daughter lost her childhood and will have to live with the knowledge that her perpetrator did not love her unconditionally but exploited her for his own sexual pleasure and then shared the recordings with others. She also addressed the severe financial repercussions the family has suffered, in part due to her daughter's need for counseling and medication due to trauma induced mental illnesses.

It would not be surprising to find that many other victims suffer similarly. As this Court knows from other child exploitation cases, victims and their family members often provide impact statements that paint a clear but discouraging picture of the long-term harm caused by the propagation of their child pornography images and videos. Victims often report that knowing that "sick" people are looking at their images makes them feel violated and sick. They often worry that someone who looks at them in public is recognizing them from the sexually abusive images of them available on the Internet. Some are worried that the sex offenders will come find them and abuse them again. Many of these children are reluctant to leave the house, to do every day activities like grocery shopping, attending college, or maintaining a job. This kind of stress can cause both emotional and physical problems that can result in the need for life-long treatment, which can be very expensive. Some recognize that the sexually explicit images of them can be used to coerce other children to engage in similar behavior or can whet the sexual appetite of a sex offender and lead to additional sexual abuse of a child. Such reports clearly support the seriousness of child pornography crimes.

6

Finally, a recent study published in the Journal of Sexual Aggression found that empirical evidence actually shows that child pornography offenders are more dangerous, not less, because of often unknown contact offenses at the time of sentencing, thus validating Congress' view that U.S.S.G. §2G2.2 offenses are serious.[3] In this case, of course, we know that the defendant did have at least one contact offense and exploited many other children online.

II.  Defendant's History and Characteristics, 18 U.S.C. § 3553(a)(1)

Pursuant to 18 U.S.C. § 3553(a)(1), this Court also should consider the defendant's history and characteristics.  Even if this Court disregards the United States' argument that the advisory guidelines should be at a higher level, the United States encourages this Court to consider the extensive nature of the defendant's predation of so many young girls online. The United States has limited its presentation of additional criminal conduct for purposes of sentencing to the one-year time period listed in the indictment, and of those has chosen only 21 victims for purposes of the guidelines. Yet there are a number of other victims, including the victim referenced in paragraph 29 of PSR, who were victimized by Bonick, all for his own sexual gratification. In fact, evidence at trial showed that the defendant was engaged in this behavior long before July of 2010: at trial, the defense argued that the "Tagged" contacts were made at the time the defendant was 17 years old, which would have been in the early 2000's. See U.S. Trial Exhibit #9. Additionally, sexually explicit chats dating back to 2008, long before he lived in Tennessee, were found during the forensic analysis. So Bonick's behavior is anything but aberrant. Rather, it was long-term and ongoing.

---

[3] M.L. Bourke, et. al., "The Use of Tactical Polygraph with Sex Offenders," Journal of Sexual Aggression (2014), p 5-6.

7

Interestingly, Bonick has minimized his criminal activity, objecting to virtually every part of the PSR, including information that was presented at trial. For example, the defendant objects to the enhancements for possession of child pornography that depicted prepubescent girls and distribution, which was accomplished through email, despite the fact that both were presented at trial, as shown in Trial Exhibits ## 10, 12, and 15. The defendant denies he engaged in any sexual activity that would support the pattern of behavior activity, although evidence of two victims was presented at trial: the 15-year-old girl he admitted having sex with and his recording sexually explicit images of "Natalitags" while she complied with his requests on webcam. It appears that he also denies using a computer or that there were more than 10 images total, despite a showing of both at trial. Apparently this defendant asks this Court to disregard his criminal behavior that supports enhancements in the guideline calculations and to focus only on the fact that he served in the military, claiming he received awards that are not supported by the military records.

Finally, testimony at trial showed that Bonick fled Nashville when he was faced with this criminal investigation. Three days after the defendant's interview with Det. Michael Adkins with the Metropolitan Nashville Police Department, at which time the defendant said he had no plans to go anywhere, the defendant's family filed a missing person's report. He was not found until over two months later in Arkansas, obviously having tried to evade apprehension.

In summary, the defendant has continued to eschew responsibility for his criminal activity. Furthermore, while he does not have a criminal record, it is clear that this defendant has been engaged in harmful criminal behavior for years that has gone undetected until he was discovered in a proactive investigation.

III.      <u>Need for Sentence Imposed to Reflect the Seriousness of Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense</u>, 18 U.S.C. § 3553(a)(2)(A)

In determining the appropriate sentence, this Court also should consider, pursuant to 18 U.S.C. §3552(a)(2), the need to reflect the seriousness of the offenses, to promote respect for the law, and to provide just punishment for the offenses. A sentence below the guideline range would fail to promote respect for the law or provide just punishment for a man who has, for years, been collecting child pornography and trolling the Internet for young teens who lack sufficient judgment to avoid falling prey to a man who seeks to entice them to engage in sexual activity for his own pleasure. These kinds of enticement crimes, which were uncommon just a few years ago, have become increasingly common, as reported by the media and evidenced by the increased number of such cases now in federal court in this jurisdiction. The results of online enticement of young girls, as well as the trafficking of child pornography, can be devastating for victims. A guideline sentence would accomplish the goals of reflecting the seriousness of these crimes, promoting respect for the law, and providing a just punishment.

IV.      <u>Affording Adequate Deterrence to Criminal Conduct</u>, 18 U.S.C. § 3553(a)(2)(B)

Given that enticement and collection of child pornography have become so prevalent, it is imperative that a sentence be imposed that affords adequate deterrence to criminal conduct and promotes future lawful conduct, pursuant to 18 U.S.C. § 3553(a)(2)(B). Indeed, Congress, the Supreme Court, and the Sentencing Commission believe that general deterrence is a very important factor when considering an appropriate sentence. *United States v. Irey*, 612 F.3d 1160, 1210-11 (citing *United States v. Ferber*, 458 U.S. 747, 760 (1982); *Osbourne v. Ohio*, 495 U.S. 103, 109-10 (1990) (holding that "[i]t is also surely reasonable for the State to conclude that it will decrease

9

the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) (stating that "[t]ransporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."); *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (noting that "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced").

In *United States v. Bistline*, the Sixth Circuit reversed the district court for failing to see any importance in general deterrence for a defendant who had collected child pornography. 665 F.3d 758, 767 (6th Cir. 2012). The district court in that case had stated that "general deterrence . . . will have little [if] anything to do with this particular case." *Id.* The Sixth Circuit found that the district court's statement was "inexplicable and in any even conflicts with our statement that 'general deterrence is crucial in the child pornography context[.]'" *Id.* (citing *United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010)).

In this case, however, not only did the defendant collect and trade child pornography, he also enticed minors to engage in sexual activity so he could record it and sought for them to send sexually explicit material to him. He further successfully enticed one minor to meet with him to engage in sex. Thus, it is not only important that the sentence in this case provide a general deterrent, but a substantial sentence also would discourage *this* defendant from engaging in more criminal activity upon release.

10

Case 3:12-cr-00136   Document 164   Filed 08/23/16   Page 10 of 16 PageID #: 1391

V.    Protection of the Public from Further Crimes of Defendant, 18 U.S.C. § 3553(a)(2)(C)

In determining the appropriate sentence, the Court also should consider the need to protect the public from further crimes of the defendant, pursuant to 18 U.S.C. § 3553(a)(2)(C). In this case, the defendant engaged in multiple attempts, many successful, to entice minor, adolescent girls to engage in unlawful sexual activity over a number of years. Additionally, he has collected child pornography from these victims as well as through trading online with others. This defendant clearly has little self-control when it comes to his own sexual desires. These factors are indicative of the serious danger this man presents to the community.

According to a variety of different studies, the re-offense rate (as opposed to the recidivism rate, which only tracks rearrests) of child sex offenders is not insignificant. Recidivism and Reoffense Rates of Adult Sex Offenders, Stephen Brake, Ph.D. (September 2012). Such a risk is higher for those who have prior contact offenses. While there could be other contact victims, we know that Bonick has engaged in sex with a 15-year-old girl when he was 25. Additionally, the defendant was able to produce child pornography by recording a minor girl engaging in self-masturbation after convincing her do so on a webcam. And there is circumstantial evidence from the chat sessions, that there could be additional victims. This defendant clearly is a danger to the community.

Under these circumstances, a below guidelines sentence would be unlikely to achieve the sentencing goal of protecting the public.

VI.    Sentencing Guideline Range, 18 U.S.C. § 3553(a)(4)

This Court also should consider the advisory sentencing guidelines in determining the appropriate sentence, pursuant to 18 U.S.C. § 3553(a)(4). The United States recently submitted its

Sentencing Position and relies on that filing to support its position that the appropriate guideline level should be 43 or 41. Based on the defendant's Criminal History Category of I, the advisory guideline range for level 41 would be 324 to 405 months and for level 43 would be life. D.E. 154: U.S. Sentencing Position.

Defendant, on the other hand, essentially objects to the entire PSR and asks this Court to make a downward departure, presumably asking this Court to impose the mandatory minimum sentence of 10 years. In his sentencing position, the defendant specifically objects to every enhancement. D.E. 159: Defendant's Sentencing Position.

First, the defendant argues that the two level enhancement for possessing sexually explicit images of prepubescent minors, pursuant to U.S.S.G. § 2G2.2(b)(2), should not apply because there was no such evidence presented at trial. During the trial, however, the United States introduced several exhibits that included some minor girls engaged in sexually explicit conduct who clearly were undeveloped. See, for example, U.S. Trial Exhibits ## 10, 12, 15. The United States submits that the enhancement is appropriate and supported by a preponderance of the evidence.

The defendant next objects to the enhancement for distribution, despite the fact that emails were presented at trial in which he was sending child pornography to other individuals via attachment to those emails. See, for example, U.S. Trial Exhibit # 10. The United States also submits that this enhancement is appropriate and supported by a preponderance of the evidence.

Next, the defendant argues that the pattern of activity enhancement should not apply be applied because the United States did not introduce any evidence of it at trial. Contrary to the defendant's position, such evidence is not required to be introduced at trial: "'Pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more

12

separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2(b)(5), Application Note 1. While the United States did not have to present this evidence at trial, there was testimony that the defendant admitted to having engaged in sexual activity with a 15-year-old when he was at least ten years older, and that the defendant captured child pornography images of 15-year-old "Natalitags." See U.S. Trial Exhibits ## 1, 20, 21. While the United States believes this enhancement has already been proven by a preponderance, additional supporting evidence will be presented at sentencing.

The defendant further objects to the enhancement for use of a computer, pursuant to U.S.S.G. §2G2.2(b)(6). The evidence at trial, however, clearly showed that the defendant's computers contained child pornography and that he used the computers to connect to the Internet and chat with "lilmaddygrl," "Natalitags," and others. See U.S. Trial Exhibits ## 1, 9-21. This enhancement clearly applies.

The defendant also objects to the enhancement for possessing between 10 and 150 images, pursuant to U.S.S.G. §2G2.2(b)(7)(A). The trial exhibits themselves, however, contain more than 10 images. See U.S. Trial Exhibits ## 10, 12, 14, 15, 19, 20, 22. This enhancement clearly applies.

The defendant next argues that this Court should apply a downward departure pursuant to U.S.S.G. §5K2.0(b). This section allows imposition of a below guideline range sentence in a limited number of mitigating circumstances that have been identified as permissible grounds for a downward departure, that have not adequately been taken into consideration by the Sentencing Commission, and that should result in a sentence different from the previously determined range. The defendant, however, has failed to present any mitigating circumstances that would permissible

13

under this guideline. He relies solely on the fact that he served in the military, which while commendable and should be considered a mitigating characteristic, is insufficient to support a downward departure or variance. The other "mitigating" circumstances, such as the number of images and the lack of prior criminal history, have already been accounted for in the guideline calculation. And the defendant's pre-trial incarceration will undoubtedly be applied toward his sentence. A downward departure or variance is simply unwarranted in this case.

VII.   Disparity in Sentencing, 18 U.S.C. § 3553(a)(6)

The vast majority of defendants convicted of serious child exploitation crimes spend much more than 120 months in prison, especially when they have engaged in contact offenses. *See, for example, United States v. Richard Steven Brown*, # 3:07-cr-00258 (received a sentence of 235 months for transporting, receiving, and possession child pornography that occurred contemporaneously with the defendant's abuse of a prepubescent child); *United States v. Jason E. Mikula*, 3:14-cr-00003 (received a sentence of 240 months after pleading guilty to charges of receiving and possessing child pornography when he had a known contact offense; affirmed on appeal); *United States v. Daniel Green*, 3:10-CR-0098 (received the maximum sentence of 80 years after pleading guilty to production of child pornography); *United States v. Billy Nichols, Sr.*, 3:10-cr-00217 (received a 50 year sentence for production of child pornography depicting the lascivious exhibition of genitalia of a prepubescent child while she was sleeping). Thus, imposing a significant sentence of incarceration for a man known to have enticed young girls to engage in online or in person sexual activity for many years and who also collected and traded child pornography, would avoid disparate sentencing.

Conclusion

14

The United States submits that consideration of the factors under 18 U.S.C. § 3553(a) supports a sentence at or near the guideline range of 324 to 405 months. Specifically, the United States suggests that a sentence of 300 months would be appropriate for someone who has victimized numerous young girls, has collected and traded child pornography, has failed to take responsibility for his criminal activity, and shown no remorse. Such a sentence, which is within the guideline range as identified by the U.S. Probation Office, would recognize the serious nature of these crimes; would account for defendant's history and characteristics; and would address the need to reflect the seriousness of the crime and promote respect for the law, the need for deterrence, the need to protect the public from future crimes of the defendant, and the need to avoid disparity among offenders in this district. The United States also urges this Court to impose a life time supervised release period to make sure that defendant is being monitored and to reduce the risk to the community once he is released. Such a sentence is sufficient but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

DAVID RIVERA
United States Attorney

s/ S. Carran Daughtrey
S. Carran Daughtrey
Assistant United States Attorney

CERTIFICATE OF SERVICE

15

I hereby certify that a true and correct electronic copy of the foregoing has been delivered to Stephen Parten, attorney for defendant, via electronic filing, on this, the 23rd day of August, 2016.

                                            s/ S. Carran Daughtrey
                                            S. Carran Daughtrey

16

Case 3:12-cr-00136   Document 164   Filed 08/23/16   Page 16 of 16 PageID #: 1397